IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JOHN EDWARD HAMMOND, #122180, ) | Civil Action No. 3:08-3592-SB-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| MAJOR D. BUSH; CAPT. R. ABSTON; ) | **REPORT AND RECOMMENDATION** |
| LT. B. HUNTER; LT. C. WILLIAMS, JR.; ) | |
| LT. J. BENNETT; LT. D. HAROUFF; ) | |
| SGT. J. JEFFREY; OFC. M. SAYPHENS; AND ) | |
| DIRECTOR JON E. OZMINT, ) | |
| ) | |
| Defendants ) | |
| ) | |
| _____ ) | |

This action was filed by the pro se Plaintiff on October 28, 2008.[1] Plaintiff is an inmate at the Perry Correctional Institution ("PCI") of the South Carolina Department of Corrections ("SCDC"). Defendants filed a motion for summary judgment on May 1, 2009. Because Plaintiff is proceeding pro se, he was advised on May 4, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff filed a response on June 3, 2009. The same day, he also filed a motion for summary judgment and a motion for an injunction and restraining order.

**MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff requests that his "motion for injunction and temporary restraining order" be granted because he believes that Defendants should be "red flagged" to keep them separated from him to

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

"stop any further incidents in the future or any revenge." He also seeks a transfer to another correctional institution. Defendants did not file a response.

The undersigned construes Plaintiff's motion as one for a preliminary injunction. As a preliminary injunction temporarily affords an extraordinary remedy prior to trial that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate that: (1) he is likely to succeed on the merits at trial; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. See Winter v. Natural Resources Defense Council, Inc., __ U.S __, 129 S.Ct. 365, 374-376, 172 L.Ed.2d 249 (2008).[2]

Plaintiff is unlikely to be successful in the underlying dispute, as discussed below. In his motion for a preliminary injunction, Plaintiff appears to allege that Defendants have retaliated against him by tampering with his mail and showers and coercing other guards to bring false disciplinary charges against him. He has, however, provided nothing to support these allegations. Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72 (4th Cir. 1994), cert. denied, 514 U.S. 1022 (1995). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. "In the prison context, we treat such claims with skepticism because '[e]very act of discipline by prison officials is by definition "retaliatory" in the sense that it responds to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310 (4th Cir. 1996)(en banc), citing, Adams, 40 F.3d at

---

[2]The previous Fourth Circuit balance-of-hardship test set out in Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir.1997) is no longer to be applied when granting or denying preliminary injunctions. Rather, the standard articulated in Winter governs the issuance of such emergency relief. See Real Truth About Obama, Inc. v. Federal Election Com'n, 575 F.3d 342 (4th Cir. 2009).

2

74. To the extent that Plaintiff is requesting a transfer he fails to show that he, as a prisoner, has a constitutionally recognized liberty interest in a particular security classification or prison placement. Hewitt v. Helms, 459 U.S. 460, 468 (1983)(no constitutional right under the Due Process Clause to a particular security classification or prison placement). An inmate does not have a constitutional right to be confined in a particular location. See Olim v. Wakinekona, 461 U.S. 238 (1983); Meachum v. Fano, 427 U.S. 215 (1976).

Plaintiff also fails to show that he will suffer irreparable injury if he is not granted a preliminary injunction. Additionally, he has not shown that the balance of equities tips in his favor or that an injunction is in the public interest.[3]

**DISCUSSION**

Plaintiff was an inmate in PCI's Special Management Unit ("SMU") at the time of the alleged incidents. His allegations concern use of force incidents that occurred on June 10, 2007. He appears to allege that Defendants used excessive force against him and were negligent in providing him medical care. He also alleges assault and battery. Defendants contend that they are entitled to summary judgment because: (1) Defendants did not violate Plaintiff's constitutional rights; (2) Defendants are entitled to qualified immunity; (3) the Eleventh Amendment bars claims for money damages against Defendants in their official capacities; (4) all claims against Director Ozmint should be dismissed as there is no vicarious liability under § 1983; (5) Plaintiff is not entitled to injunctive relief; 6) any State law claims are barred by the provisions of the South Carolina Tort Claims Act.

---

[3] Even if the Blackwelder test is used, Plaintiff's motion for a preliminary injunction should be denied because he is unlikely to be successful in the underlying dispute, it is unlikely that he will suffer irreparable injury if the interim relief is denied, and there is no indication that it would be in the public interest to award relief.

3

Plaintiff filed his motion for summary judgment on June 3, 2009. The amended deadline for filing dispositive motions in this action was May 1, 2009. See Doc. 33. Plaintiff's motion for summary judgment is untimely, as it was filed over a month after the deadline for filing dispositive motions. Further, Plaintiff fails to show that he is entitled to summary judgment.

1.   **Excessive Force**

Plaintiff appears to allege that Defendants used excessive force against him by macing him, extracting him from his cell, and placing him in the restraint chair. He states that on June 10, 2007, he had his jumpsuit and towel covering his cell door bars because he was using the restroom. Plaintiff heard a woman's voice tell him to take down the jumpsuit and towel. He told the woman, who he identifies as Captain Abston, that he was using the restroom. Plaintiff heard an unknown man's voice, who he identifies as Major Bush, tell him to take down his jumpsuit and towel. He told Major Bush that he was using the restroom. Plaintiff claims that Major Bush, who was dressed in plain clothes, gave an order to open Plaintiff's cell door and sprayed him with chemical munitions. Plaintiff claims that Major Bush had not been assigned to PCI at the time (although he was supposed to be assigned there on June 18, 2007) and was instead a Major at the McCormick Correctional Institution of the SCDC. Bush put Plaintiff on SMU security-strip-cell status.

Plaintiff claims that later the same day, Defendant Jeffrey came to Plaintiff's cell door and saw that Plaintiff had a pill pack. Defendant Harouff accused Plaintiff of having contraband, Defendant Abston and Bush returned to Plaintiff's cell, and Bush asked Plaintiff for the pill pack. Plaintiff told correctional officers that he wanted to give the pill pack to the nurse. He claims that Bush then gave orders to Defendants Williams, Jr., Jeffrey, and Sayphens (members of the extraction or cell movement team) to suit-up. Plaintiff claims that Defendant Harouff maced him; Williams, Jr. rushed into the cell and knocked Plaintiff's against the concrete wall; Defendant Bush grabbed

4

him by the head and neck and started slamming his face, head, and neck into the concrete floor; and Harouff lifted him up into the air by his legs and slammed him down into the steel cell bed. Defendants Bush, Williams, Jr. Bennett, Hunter, Harouff, Jeffrey, Sayphens, and Abston placed Plaintiff in a restraint chair. Licensed practical nurse Alice M. Revis examined Plaintiff while he was in the chair restraints, but Plaintiff claims Defendant Bush told Revis to get out of the cell and then Bush maced Plaintiff. As a result of Defendants' actions, Plaintiff claims he suffered "smashed" tissues in his back and a broken neck which required surgery.

Defendants contend that Plaintiff fails to show that his constitutional rights were violated because any injuries sustained were de minimis and the force used against Plaintiff was reasonable and necessary in order to maintain institutional security. They deny punching, kicking, hitting, or slamming Plaintiff in any way. Defendants provide that Major Bush issued an order to the control room to open the outer door of Plaintiff's cell in an attempt to remove the jumpsuit after Plaintiff refused direct orders from Captain Abston and Major Bush to do so. They state that, for security reasons, inmates are not allowed to cover the window of their cell door with any item. Abston and Bush state that when the outer door was opened, Plaintiff began throwing a liquid substance through the cell door food flap at them and he continued to be unruly and uncooperative. See Abston and Bush Affs. Sgt. Harouff states he administered a short burst of chemical munitions into Plaintiff's cell in order to get him to comply. Correctional officers entered the cell, restrained Plaintiff, and placed him in controlled cell status (where all items are removed from the cell other than a blanket and gown). See Harouff, Abston, and Bush Affs.

Later that day, Officer Mark Seyphers[4] witnessed contraband slide across the floor from one inmates's cell door into Plaintiff's cell door. He believed the item was a pill pack used to hold medicines and he contacted his supervisor (Lt. Harouff). Harouff states he directed Plaintiff to relinquish the contraband, but Plaintiff refused to comply and Harouff administered a short burst of chemicals into the cell. Plaintiff refused to comply and Lt. Harouff called Abston and Bush. See Harouff Aff. Plaintiff refused further direct orders to relinquish the pill pack and Defendant Bush ordered that an extraction team be assembled. Defendants deny that anyone struck Plaintiff or that he received any apparent injury during the extraction. See Bush, Abston, Harouff, Williams, and Seyphers Affs. Defendants provide that, because Plaintiff's cell had been sprayed with chemicals, he was taken outside for fresh air and given a shower. Plaintiff was placed in a restraint chair from approximately 12:30 p.m. to 4:30 p.m.

Determination of whether cruel and unusual punishment has been inflicted on a prisoner in violation of the Eighth Amendment requires analysis of subjective and objective components. See Wilson v. Seiter, 501 U.S. 294, 302 (1991). First, the objective portion of an excessive force claim requires a prisoner to show that the injury inflicted was sufficiently serious. Although a plaintiff need not show a significant injury, see Hudson v. McMillian, 503 U.S. 1, 7 (1992), the Fourth Circuit, in Norman v. Taylor, 25 F.3d 1259 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Norman v. Taylor, 25 F.3d at 1263. Because de minimis injury may serve as evidence that de minimis force was used, an excessive force claim should not lie where a prisoner's injury is de minimis. See id. at 1262-63. With only de

---

[4]This appears to be the Defendant identified by Plaintiff as "Sayphens."

minimis physical injury, a prisoner may only recover if the challenged conduct resulted "in an impermissible infliction of pain" or was otherwise "of a sort repugnant to the conscience of mankind." Id. at 1263 n. 4. The Fourth Circuit has explained:

> We recognize that there may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in the impermissible infliction of pain. In these circumstances, we believe that either the force will be "of a sort repugnant to the conscience of mankind," and thus expressly outside the de minimis force exception, or the pain itself will be such that it can properly be said to constitute more than de minimis injury.

Id. at 1263, n. 4.

Plaintiff fails to establish an Eighth Amendment claim because he has shown no more than de minimis injury. Plaintiff's SCDC medical records indicate that Plaintiff was seen by a nurse at approximately 10:00 a.m. after the initial incident with his jumpsuit. He complained of injury to his right hand and wrist, but the nurse saw no evidence of broken skin to his right wrist or hand. At approximately 1:00 p.m., he was seen by a nurse following the extraction team incident. The nurse noted no visible swelling to any part of Plaintiff's head, and there was no broken skin or swelling to his wrist. Plaintiff was seen by the nurse again at approximately 5:15, after being removed from the restraint chair. Plaintiff was noted to be moving about his cell without difficulty and was able to move his fingers, hands, and arms without difficulty. He had full range of motion of his head. Plaintiff also complained of pain in his neck and lower back, and a knot on his forehead. The medical records, however, indicate that no injury was found. X-rays on June 20, 2007 showed only arthritic and degenerative changes to Plaintiff's neck, and no fractures to his right wrist. His medical records indicate a long history of neck pain and degenerative arthritis. X-rays in 2003 and 2005 showed degenerative changes in his cervical spine with disc space narrowing and osteophytes. Plaintiff underwent surgery (decompressive cervical laminectomy from C3 to C7) on November 7,

2007. See Jean Rutledge ("Rutledge") Aff.[5] and Plaintiff's Medical Records; see also June 10, 2007 DVD (attachment to Abston Aff.).[6] Plaintiff has not shown anything to link the June 10, 2007 incidents to his neck surgery in November 2007.

Thus, any use of force by Defendants was de minimis. See, e.g., Norman, 25 F.3d at 1262-64 (keys swung at inmate's face which struck his thumb was de minimis force); Gavin v. Ammons, 21 F.3d 430, 1994 WL 117983 (7th Cir. April 6, 1994)[Table](guard's pulling of inmate's hair was de minimis force); Calabria v. Dubois, 23 F.3d 394, 1994 WL 209938 (1st Cir. May 24, 1994)[Table](radio belt thrown at face of inmate causing blood to appear was de minimis force); White v. Holmes, 21 F.3d 277, 280-81 (8th Cir. 1994)(keys swung at inmate which slashed his ear was de minimis force); Jackson v. Pitcher, 966 F.2d 1452, 1992 WL 133041 (6th Cir. June 16, 1992)[Table](guard's stomp on the hand of inmate was de minimis force), cert. denied, 506 U.S. 1024; Black Spotted Horse v. Else, 767 F.2d 516, 517 (8th Cir. 1985)(corrections officer's pushing a cubicle wall so as to strike plaintiff's legs, brusque order of the inmate out of his cell and poking inmate in the back was de minimis force); see also Roberts v. Samardvich, 909 F. Supp. 594 (N.D.Ind. 1995)(grabbing inmate, pushing him up the stairs toward his cell, and placing him in cell cuffed, shackled, and secured to the door was de minimis force under the circumstances); McMiller v. Wolf, 1995 WL 529620 (W.D.N.Y. August 28, 1995)(snatching inmate's mirror, breaking it against cell bars and thereby lacerating inmate's finger was de minimis force); Crow v. Leach, 1995 WL 456357 (N.D.Cal. July 28, 1995)(corrections officer's pushing inmate into chair causing his shoulder to break window behind him was de minimis force); Jackson v. Hurley, 1993 WL 515688

---

[5]Rutledge is a Registered Nurse who serves as the Health Care Authority at PCI.

[6]The DVD shows the extraction of Plaintiff from his cell and the examination of Plaintiff on several occasions by a nurse.

(N.D.Cal. November 23, 1993)(blow to back of neck with forearm and kick to the ankle of inmate were de minimis force); DeArmas v. Jaycox, 1993 WL 37501 (S.D.N.Y. February 8, 1993), aff'd, 14 F.3d 591 (2d Cir. 1993)(corrections officer's punching inmate in arm and kicking inmate in leg was de minimis force); Olson v. Coleman, 804 F. Supp. 148, 150 (D. Kan. 1992)(single blow to head of handcuffed inmate was de minimis force); Candelaria v. Coughlin, 787 F. Supp. 368, 374-75 (S.D.N.Y. 1992)(fist pushed against neck of inmate causing him to lose his breath was de minimis force), aff'd, 979 F.2d 845 (2d Cir. 1992)[Table]; Neal v. Miller, 778 F. Supp. 378, 384 (W.D.Mich. 1991)(backhand blow with fist to the groin of inmate was de minimis force); Ramos v. Hicks, 1988 WL 80176 (S.D.N.Y. July 25, 1988)("bent wrist comealong hold" or single punch not unreasonable or excessive where inmate ignored repeated order, became agitated, and attempted to damage state property); Anderson v. Sullivan, 702 F. Supp. 424, 426 (S.D.N.Y. 1988)(corrections officer's pulling inmate's arms behind back, lifting them up and forcing inmate's face into cell bars was de minimis force).

Even if Plaintiff could show that his injuries were more than de minimis, he fails to establish the subjective component of his excessive force case. Appropriate force may be used by prison officials when it is intended to maintain discipline within a prison institution or to restore order. See Hudson, 503 U.S. at 6; Whitley v. Albers, 475 U.S. 312, 320-21 (1986). When an inmate claims prison officials used excessive force "he is forced to meet a higher standard (than deliberate indifference) to establish the subjective component." Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). The subjective portion of an excessive force claim requires a prisoner to demonstrate that officials inflicted force sadistically and maliciously for the sole purpose of causing harm. See Whitley, 475 U.S. at 320-21; Williams v. Benjamin, 77 F.3d at 761. The Supreme Court has directed

that several factors should be balanced in determining whether prison officers acted maliciously and sadistically. These factors, originally set out in Whitley, include:

>   (1) the need for the application of force,
>
>   (2) the relationship between that need and the amount of force used,
>
>   (3) the threat "reasonably perceived by the responsible officials," and
>
>   (4) "any efforts made to temper the severity of a forceful response."

Hudson, 503 U.S. at 7 (citations omitted); see also Williams v. Benjamin, 77 F.3d at 762. The absence of serious injury is a relevant, but not dispositive, additional factor to be considered in the subjective analysis. Hudson, 503 U.S. at 7.

Plaintiff fails to establish the subjective component of his excessive force claim. Force was necessary to gain control of Plaintiff. Plaintiff has an extremely lengthy disciplinary history at SCDC. See attachment to Janice Kenealy (Supervisor of Inmate Records) Aff. He admits that he had his jumpsuit over the cell window and correctional officers directed him to remove the jumpsuit. Plaintiff also admits that he refused to turn over the pill pack to officers after being directed to do so. Defendants' actions appear to be an appropriate use of force because of the need to gain control over Plaintiff. There was a threat reasonably perceived by Defendants because Plaintiff disobeyed direct orders from correctional officers. As discussed above, there is no indication that Plaintiff suffered anything more than de minimis injury from the incident. Finally, Defendants' actions appear to have been a good-faith effort to restore order.

**2.     Medical Claims**

Plaintiff alleges that Defendants were negligent in attending to his medical needs after the alleged uses of force. He states it took from June 10 to June 20, 2007 to get an x-ray of his neck, and

until September 6, 2007 to get a back x-ray. Defendants contend that Plaintiff fails to show that they were deliberately indifferent to any of his serious medical needs.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so

11

grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs after the use of force incidents. He was allowed to go outside to get fresh air and was afforded a shower after he was maced. See Rutledge Aff., Plaintiff's Medical Records, and DVD. As discussed above, Plaintiff was treated by SCDC medical personnel. X-rays, an MRI, and surgery were later provided. Additionally, Plaintiff was prescribed pain medications.

Plaintiff appears to allege claims concerning a delay in getting x-rays and other treatment. An Eighth Amendment violation, however, only occurs if the delay results in some substantial harm to the patient. See, e.g., Webb v. Hamidullah, 281 Fed.Appx. 159 (4th Cir. 2008); Sealock v. Colorado, 218 F.3d 1205, 1210 (10th Cir.2000) ("Delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm."); Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir.1993) (same); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir.1990) (same). But see Blackmore v. Kalamazoo County, 390 F.3d 890, 899 (6th Cir.2004) ("This [constitutional] violation is not premised upon the 'detrimental effect' of the delay, but rather that the delay alone in providing medical care creates a substantial risk of serious harm [of which prison officials are aware]."). Plaintiff has not shown any substantial harm from any delay in treating him.

### 3. Supervisory Liability

Defendant Ozmint contends that Plaintiff has not alleged that he (Ozmint) had any personal involvement in the alleged constitutional violations or that there was a causal link between an official policy or custom and Plaintiff's injury. The doctrine of respondeat superior generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendant Ozmint was personally responsible for any of the incidents or acted in any way other than a supervisory role. Further, Plaintiff has not shown that Ozmint was deliberately indifferent to, or tacitly authorized, any of the actions or inactions of SCDC employees. Thus, Plaintiff fails to show that Defendant Ozmint is liable on a theory of respondeat superior or supervisory liability.

### 4. Immunity

Defendants contend that they are entitled to Eleventh Amendment immunity. When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state. In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

Id. at 66.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments, and officials are entitled to Eleventh Amendment immunity. Id. at 70. In reaching this conclusion, the court held that a suit against state

14

officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities. Therefore, Defendants are entitled to Eleventh Amendment immunity from monetary damages in their official capacities.

Defendants also contend that they are entitled to qualified immunity. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by qualified immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Harlow, 457 U.S. at 818.

The Court of Appeals for the Fourth Circuit has stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994)(internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, Plaintiff fails to show that Defendants violated any of his clearly established constitutional or statutory rights. Therefore, Defendants are entitled to qualified immunity in their individual capacities.

### 5. **State Law Claims**

Plaintiff also appears to assert claims (negligence, assault, and battery) under South Carolina law. Defendants contend that any state law claims are barred by the provisions of the South Carolina

15

Tort Claims Act. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims (if any) would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed.

## **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 35) be **granted**; Plaintiff's motion for summary judgment (Doc. 41) be **denied**; and Plaintiff's motion for an injunction and temporary restraining order (Doc. 40) be **denied**.

Joseph R. McCrorey
United States Magistrate Judge

November 16, 2009
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).